10-3835.121-JCD                                              June 7, 2012

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DAVID MITCHELL,                        )
                                       )
                  Plaintiff,           )
                                       )
             v.                        )    No. 10 C 3835
                                       )
MENARD, INC. and JASON ELLIOTT,        )
d/b/a J. ELLIOTT CONSTRUCTION,         )
TRANSPORT & SNOW PLOWING,              )
                                       )
                  Defendants.          )

## MEMORANDUM OPINION

Before the court are defendants' motions for summary judgment and the motion of defendant Menard, Inc. for sanctions. For the reasons explained below, the motions for summary judgment are granted, and the motion for sanctions is denied.

## BACKGROUND

This is a personal-injury action in which plaintiff, David Mitchell, alleges that on December 15, 2009, he slipped and fell on a patch of ice in the parking lot of a Menards hardware store in Tinley Park, Illinois. Mitchell asserts negligence claims against Menard, Inc. ("Menard"), which owns the store and premises, and Jason Elliott, who operates a snowplowing business that contracted with Menard to remove snow and ice in the store's parking lot.

- 2 -

## DISCUSSION

### A.  Defendants' Motions for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In considering such a motion, we construe the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party.  See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question."  McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by citing to particular parts of materials in the record or by showing that the materials cited do not establish the absence or presence of a genuine dispute, or

- 3 -

that an adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1).  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required," we may give an opportunity to properly support or address the fact, consider the fact undisputed for purposes of the motion, grant summary judgment if the motion and supporting materials show that the movant is entitled to it, or issue any other appropriate order.  Fed. R. Civ. P. 56(e).

Before outlining the facts, we must address the plaintiff's Local Rule 56.1 Statement, which is confusingly written.  One fact reads: "There were numerous islands throughout the parking lot and they removed the snow around the islands the same way they pushed it."  (Pl.'s Rule 56.1 Statement, ¶ 6.)  "They" is not defined, and the rest of the sentence is nonsensical.  Another states: "There was no snow on there.  It was just blacktop."  (Pl.'s Rule 56.1 Statement, ¶ 10.)  We cannot glean from the context what "on there" means.  Plaintiff also states: "[T]he ice where plaintiff fell was a bad spot."  (Pl.'s Rule 56.1 Statement, ¶ 26.)  This is not a statement of fact; it is a statement of opinion.[1]  These statements are stricken.

---

[1]  At his deposition, Daniel Ahart, who was the assistant general manager of the Tinley Park Menards store in December 2009, was asked about a photograph of the patch of ice on which plaintiff fell.  Plaintiff's counsel asked Ahart if he would consider it a "bad spot," and he replied in the affirmative.  (Pl.'s Mem. in Resp. to Menard's Mot. for Summ. J., Ex. D, Tr. of Dep. of Daniel Ahart, at 15.)

- 4 -

The undisputed facts, except where noted, are as follows. Prior to plaintiff's fall on December 15, 2009, snow had last fallen and was plowed by Elliott on December 10, 2009. (Under the terms of the snowplowing contract between Menard and Elliott, Elliott would plow the Menards parking lot whenever more than one inch of snow had fallen.)  When removing snow, Elliott pushed it to the far ends of the property, away from the store.  He did not push snow onto the "landscape islands" in the lot, nor did he remove snow from those islands.  Usually, Elliott was unable to plow the first four spaces in the parking lot closest to the store entry because they were occupied by vehicles belonging to the store's overnight cleaning crew.  He plowed around those vehicles, leaving fallen snow in the spaces between the vehicles.

On December 10, the temperature reached only 14 degrees Fahrenheit.  Temperatures rose during the next few days; on December 14, 2009, the high temperature was 39 degrees.  Overnight, however, it dropped below the freezing point, to 29 degrees.

On December 15, 2009, plaintiff arrived at the Tinley Park Menards around 6:30 a.m. and parked his truck in the first space near the entry, next to a landscape island on the passenger's side of the truck.  The lights in the parking lot were on.  Plaintiff entered Menards and shopped for ten to fifteen minutes.  After making his purchases, he left the store through the exit at the opposite end of the store.  Plaintiff claims that "as soon as [he]

- 5 -

walked out the door, the parking lot lights went off." (Menard's
Mem. in Supp. of Mot. for Summ. J., Ex. C, Tr. of Pl.'s Dep. at
30.) Plaintiff walked to his truck and put his purchases in the
back of the truck. As plaintiff walked around the back driver's
side corner of the truck toward the driver's door, he slipped and
fell on a patch of ice. Plaintiff does not recall much about the
fall--he testified at his deposition that his memory of it and the
immediate aftermath is "fuzzy" and "foggy," Tr. of Pl.'s Dep. at
41, 44--but does remember that afterward, his back, head, arm,
ankle, and wrist were in pain.

Menard has submitted a video recording of the incident, shot
from a camera mounted on the front of the store facing the parking
lot. This video of the incident shows that after his fall,
plaintiff got up and paced back and forth behind his truck several
times. Then he went back inside the store and spoke with a Menards
employee, Allison Kennedy, who was in the front office. Kennedy
was an assistant "front end" manager who was responsible for the
cashiers and checkout area. (Menard's Mem. in Supp. of Mot. for
Summ. J., Ex. E, Dep. of Allison Kennedy, at 7.) Plaintiff told
Kennedy that he had slipped and fallen on ice in the lot because
the lights in the lot were off. Plaintiff did not appear to
Kennedy to be injured, but he said that his head hurt, so Kennedy
offered to call for medical help. Plaintiff declined. At
plaintiff's request, Kennedy accompanied him outside to look at the

- 6 -

ice, which was thick and white and formed a semicircle around the back of plaintiff's truck. Kennedy also took a photo of the ice to attach to the accident report for Menard's insurance carrier, Zurich Insurance ("Zurich"). Plaintiff then left, and Kennedy went back inside to complete the report and to review the video recording of plaintiff's fall. When she watched the recording, she noted that the parking-lot lights had gone off (as sunrise approached), but that they had gone off *after* plaintiff's fall. Kennedy finished her report and sent it to Zurich.

That morning, on his way to work and at work, plaintiff vomited several times. He felt pain in his head, neck, back, ankle, knee, wrist, and elbow, and decided to visit the doctor. Plaintiff testified that his doctor diagnosed a concussion. Afterward, plaintiff received physical therapy to treat his neck, back, and arm pain. He also complains that after the fall, he still experiences pain in some of these areas as well as severe daily headaches; blurry vision in his left eye; difficulty sleeping; speech problems; inability to work; inability to enjoy recreational activities; sexual difficulties; moodiness; memory problems; and a loss of smell and taste.

The parties agree that Illinois law governs this diversity case. To recover damages for negligence, a plaintiff must prove that the defendant owed him a duty of care, defendant breached that duty, and the breach was the proximate cause of plaintiff's injury.

- 7 -

Krywin v. Chicago Transit Auth., 938 N.E.2d 440, 446 (Ill. 2010). "Unless a duty is owed, there is no negligence." Buchaklian v. Lake Cnty. Family Young Men's Christian Ass'n, 732 N.E.2d 596, 599 (Ill. App. Ct. 2000). Whether a duty exists is a question of law for the court to decide. Krywin, 938 N.E.2d at 447.

In Illinois, a landowner generally owes invitees a duty of reasonable care under the circumstances as to the state of the premises or acts done or omitted there. See Bonavia v. Rockford Flotilla 6-1, Inc., 808 N.E.2d 1131, 1135 (Ill. App. Ct. 2004) (citing 740 ILCS 130/2). The owner also has a general duty to provide a reasonably safe means of ingress to and egress from the premises. Reed v. Galaxy Holdings, Inc., 914 N.E.2d 632, 636 (Ill. App. Ct. 2009). When the owner prescribes a means of ingress and egress for invitees, the owner has a duty to illuminate properly and give adequate warning of any latent or concealed perils of which the owner has knowledge and the invitee does not. Mulvihill v. United States, No. 00 C 3495, 2001 WL 686786, at *2 (N.D. Ill. June 15, 2001) (citing Swett v. Village of Algonquin, 523 N.E.2d 594, 600-01 (Ill. App. Ct. 1988)). A snow-removal contractor has a duty not to negligently remove snow by creating or aggravating an unnatural accumulation of snow and ice. McBride v. Taxman Corp., 765 N.E.2d 51, 55 (Ill. App. Ct. 2002).

In their motions, Menard and Elliott invoke Illinois's "natural accumulation" rule. Under this rule, a property owner has

- 8 -

no duty to remove, and is not liable for injuries caused by, natural accumulations of snow and ice, nor is there a duty to warn of the dangers associated with these natural accumulations. <u>Reed</u>, 914 N.E.2d at 636. One who voluntarily undertakes the removal of snow can be subject to liability, however, where the removal causes an unnatural accumulation of ice or aggravates a natural accumulation. <u>McBride</u>, 765 N.E.2d at 54-55.

Plaintiff argues that Menard is liable under two theories: 1) it negligently allowed ice to unnaturally accumulate in the Menards parking lot; and 2) it "negligently failed to provide sufficient lighting to allow safe ingress and egress from the parking lot" because the parking-lot lights went out. (Pl.'s Mem. in Resp. to Menard's Mot. for Summ. J. at 1-2.) Plaintiff also invokes two theories as to Elliott: 1) his plowing caused an unnatural accumulation of ice and snow; and 2) he "was negligent in the removal of the ice and snow." (Pl.'s Mem. in Resp. to Elliott's Mot. for Summ. J. at 2.)

It is plaintiff's burden to prove that he slipped as a result of an unnatural accumulation. Defendants contend that plaintiff has no evidence that permits an inference that the ice around his truck was caused by an unnatural accumulation. In their view, the facts in the record show that the patch of ice was created naturally. Snow had fallen five days prior. The lot had been plowed, but not in the first spot where plaintiff parked because

- 9 -

one of the cleaning crew's vehicles had been parked there, and not on top of the landscape island immediately adjacent to that parking spot. The videotape of the parking lot does not show any patches or ice or snow on the surface of the lot except the patch in question and around the adjacent landscape island. It is undisputed that the temperature had risen above freezing on the three days prior to the date of plaintiff's fall, and had dropped to freezing (December 13) or below freezing (December 12 and 14) those nights. Defendants assert that the patch of ice was caused naturally by snow from either the adjacent landscape island or the unplowed snow in the first four parking spots, melting and running off and then re-freezing.

We agree with defendants that plaintiff has failed to present evidence indicating that the ice near his truck accumulated unnaturally and gave rise to a duty of either defendant to remove it, protect against it, or warn plaintiff of it. Plaintiff makes two arguments regarding the ice. First, he speculates--but fails to present any evidence allowing a reasonable inference--that the ice formation was caused by Elliott's "failure to properly plow" the lot in that he plowed around the vehicles of the cleaning crew. (Pl.'s Mem. in Resp. to Elliott's Mot. for Summ. J. at 2.) We are mindful that we view the evidence in the light most favorable to plaintiff, but his merely inviting speculation (and vague speculation at that) as to the cause of the ice is insufficient to

- 10 -

overcome summary judgment. See Ciciora v. CCAA, Inc., 581 F.3d 480, 482-84 (7th Cir. 2009) (noting that in cases involving the natural-accumulation rule, "Illinois courts have rejected cases with far more evidence than . . . vague speculation"). Plaintiff also contends that it "can be inferred" that the ice "could have come because the defendant failed to plow around the island or the area where the trucks were." (Pl.'s Mem. in Resp. to Menard's Mot. for Summ. J. at 6.) This is an argument that Elliott failed to plow snow that had naturally accumulated; plaintiff equates "improper plowing" with the failure to plow the four spaces. Pursuant to the natural-accumulation rule, however, Elliott and Menard owed plaintiff only a duty not to negligently remove snow; they did not owe plaintiff any general duty to remove it. See, e.g., McBride, 765 N.E.2d at 55-56; Tzakis v. Dominick's Finer Foods, Inc., 826 N.E.2d 987, 992-94 (Ill. App. Ct. 2005). Plaintiff's unsupported speculation fails to create a genuine issue of material fact as to the cause of the ice.

Plaintiff also alleges that his injuries resulted from Menard's failure to provide sufficient lighting in the parking lot. He does not claim that the lighting was generally inadequate when he arrived at the store and went inside; rather, he contends that the parking-lot lights "went off" as he walked out of the store and that he slipped on the ice because "it was now dark and he couldn't see." (Pl.'s Mem. in Resp. to Menard's Mot. for Summ. J. at 2.)

- 11 -

Plaintiff's deposition testimony is contradicted by the video recording of the incident that Menard has submitted, which shows that plaintiff fell at approximately 6:47:48 a.m. and that the parking-lot lights went off *after* plaintiff's fall, at 6:48 a.m.

In his memorandum, plaintiff fails to address the sequence of events as they are depicted on the video. Instead, he argues that the time stamp on the video recording from the Delta Sonic Car Wash, which is across the street north of Menards, showed that the Menards parking-lot lights "went off at 6:46 a.m.," which was before the plaintiff fell. (Plaintiff offers deposition testimony to that effect from Delta Sonic's assistant director of loss prevention.) The Delta Sonic video is immaterial; it does not depict the events we are concerned with or their sequence, and there is no evidence that the clocks of two businesses' video systems were synchronized.

The Supreme Court has held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Plaintiff's version of the events--that the lights went out before he fell--is blatantly contradicted by the video; no rational juror could believe it. Therefore, plaintiff fails to create a genuine issue of material fact as to his insufficient

lighting claim as well as his unnatural-accumulation claim, and defendants' motions for summary judgment will be granted.

B.  **Menard's Motion for Sanctions**

Menard has filed a motion in which it claims that Mitchell engaged in "attempted witness tampering and abuse of the judicial process." (Mot. for Sanctions at 1.)  It requests an evidentiary hearing and seeks dismissal of the complaint and an award of costs for its defense of the case.

Menard alleges the following.  About two weeks after Mitchell's fall in the parking lot, Mitchell twice telephoned Allison Kennedy, the assistant store manager, and impersonated Nathan Wilson, who was the claims investigator for Zurich.  Posing as Wilson--and pronouncing "Zurich" incorrectly--Mitchell told Kennedy that the fall had occurred because of the timing of the parking-lot lights, which Kennedy disputed.  "Wilson" also said that there was a unnamed witness who corroborated plaintiff's version of the events.  Kennedy felt that "Wilson" was being rude and asked for his direct number so that she could call him after reviewing the video again; at this point, "Wilson" abruptly hung up.  Kennedy then called Zurich Insurance and asked to speak with Nathan Wilson.  The real Nathan Wilson confirmed that he had not called Kennedy.  After hanging up with Kennedy, Wilson telephoned plaintiff and left a message expressing his displeasure with being impersonated.  Plaintiff's counsel returned Wilson's call the same

day and denied that plaintiff had attempted any fraud. Counsel
explained that when plaintiff called the Menards store, he
identified himself as David Mitchell, not Nathan Wilson. Alison
Kennedy maintains that the caller did not identify himself as
Mitchell, but as Wilson.

Menard contends that Mitchell engaged in "witness tampering"
because he "attempted to convince Allison Kennedy to change her
testimony with respect to the cause of Plaintiff's fall."
(Supplemental Br. in Supp. of Mot. for Sanctions at 1.) At the
hearing on Menard's motion, we indicated to counsel that this
appeared to be a case where plaintiff possibly attempted to *deceive*
Menard but not to "tamper" with a witness's testimony. We gave
Menard leave to file a supplemental brief citing additional
authority in support of its argument that the alleged conduct is
sanctionable. We also asked Menard to address the significance of
fact that the conduct allegedly occurred before the filing of this
lawsuit.

In its supplemental brief, Menard persuasively argues that an
attempt to improperly influence or tamper with a witness's
testimony pre-suit is sanctionable. It fails, however, to persuade
us that the alleged conduct would constitute witness tampering. We
have reviewed Kennedy's and Wilson's deposition testimony, and we
do not agree with Menard that this evidence would show that

- 14 -

Mitchell "attempted to change"[2] Kennedy's testimony.   Menard's
allegations, if proven, could lead to the conclusion that Mitchell
impersonated Wilson in a ploy to deceive Menard and influence
Menard's *actions*, but not anyone's *testimony,* regarding Mitchell's
claim.   Accordingly, the motion for sanctions will be denied.

### CONCLUSION

For the foregoing reasons, the motion of Menard, Inc. for
summary judgment [54] is granted; the motion of Jason Elliott for
summary judgment [57] is granted; and the motion of Menard, Inc.
for sanctions [59] is denied.


DATE:    June 7, 2012


ENTER:   _____
         John F. Grady, United States District Judge

---

[2] Supplemental Brief in Supp. of Mot. for Sanctions at 3.